IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| United States of America | : : : : : : | |
| v. | : : : | No: 04-cr-88 |
| Germaine Battis | : : : : | |

OPINION AND ORDER

**February 15, 2007**                                                          **Anita Brody, J.**

### Introduction

    Defendant Germaine Battis has moved to have his federal indictment dismissed. He argues that a 32-month delay between his indictment and his first appearance before this Court constitutes a violation of the constitution's Speedy Trial clause. (His statutory rights under the Speedy Trial Act are not at issue in this motion.) After considering the motion and conducting an evidentiary hearing, I conclude that Battis cannot show a constitutional Speedy Trial violation.

### Background

Battis was allegedly involved in a confrontation during which he attempted to shoot a police officer in the face. On March 22, 2003, he was arrested by the Philadelphia Police Department and charged with state law offenses, including assault

O:\ABB 2007\Battis Speedy Trial opinion.doc

and illegal possession of a firearm. Because he cannot make bail, he has remained continuously in custody since then. On February 24, 2004, knowing that Battis was in state custody on the state charges, the United States obtained a grand jury indictment against Battis for felon in possession under 18 U.S.C. § 922(g). The federal charge arose out of the same incident that led to Mr. Battis's state charges.

On the day of the indictment, the United States, represented by AUSA Miller, obtained a bench warrant to serve as a detainer on Battis while he was in state custody. According to Miller, he personally informed the Court of Battis's whereabouts on the same day the indictment and bench warrant issued. The internal administrative "Designation Form" submitted by AUSA Miller to this Court on the day of the indictment stated that Battis was in state custody. The United States did nothing further to bring Battis to appear before the federal court at that point, preferring instead to accede to the state prosecutors' desire to prosecute Battis themselves.

On September 18, 2006, the state case against Mr. Battis was dismissed pursuant to Pennsylvania Rule of Criminal Procedure 600, the state speedy trial rule. The United States promptly sought and was granted a writ of habeas corpus *ad prosequendum* to bring Battis into federal court from state custody, where he had remained pending appeal of the state case. On November 2, 2006 Battis appeared in federal court for the first time and was appointed a Federal Defender soon thereafter. Battis then made the present motion to dismiss his indictment, and this Court held an evidentiary hearing on January

2

9, 2007. At the hearing were Mark Miller, the AUSA assigned to the case, Mark Wilson, the appointed Federal Defender, and Alan Sagot, Battis's state court counsel.

Battis had been represented in state court by Sagot, a privately retained attorney, until his money ran out and the case was transferred to a public defender. Sagot testified that he himself was an experienced federal and state criminal defense attorney and that he had confidence in the public defender who later took over the case. Sagot also stated that Battis had hired an experienced and esteemed investigator to work on the state case. No attorney entered an appearance for Battis in the federal case until the Federal Defender was appointed. Sagot testified that he was never retained to represent Battis in the federal prosecution. Once the Federal Defender was appointed he was able to obtain some documents from Battis's state court attorneys. Tr. at 10.

Despite not being retained for the federal case, in his capacity as Battis's state court lawyer Sagot did communicate with the AUSA on the case (Miller) on Battis's behalf. Soon after learning of the federal indictment [1], Sagot contacted Miller and informed him that Battis wanted the federal trial to go forward before the state trial. Sagot testified that he believed it was in Battis's best interests for the federal case to go before the state case because he faced a more serious sentence on the federal charges. Sagot also testified that he had reached a "tacit agreement" with the state district attorney that if Battis were tried and convicted first in federal court, the state charges would be dropped or Battis would receive a state sentence concurrent to the federal sentence. AUSA Miller confirmed that Sagot told him of Battis's desire to go to trial first on the federal case. However, Miller denied that Sagot told him about the "tacit agreement"

---

[1] Sagot testified that he first spoke to the AUSA about Battis's case one month after the "second listing" of the state court prosecution. The record does not clearly indicate what this date would have been.

3

with the state prosecutors.  Miller also believed up until the hearing before this Court that Sagot had been retained to represent Battis in federal court at the time of their conversations.  Tr. at 24.  Nothing in the record indicates that Miller had any reason to believe that Sagot was not representing Battis on the federal charges.

The United States conceded at the hearing that it was solely responsible for the 32 month delay, and that such a delay would be unusual in any other case.  The United States explained that it allowed the delay because the state prosecutors wanted to try Battis themselves.  Because of the state's special interest in the case, and the United States deferred its own prosecution.  As AUSA Miller explained at the hearing, "when the DA's office tells you that they want to go to bat for their police officers, it tends to get my attention."  Tr. at 27.

## Speedy Trial Balancing Test

The Sixth Amendment guarantees the right to a "speedy and public trial."[2]  Both the defendant and the public have an interest in the Speedy Trial guarantee:  the defendant may have an interest in being tried promptly; and the public has an interest in seeing suspects swiftly and efficiently tried or acquitted.  *Barker v. Wingo,* 407 U.S. 514, 519 (1972).  The right is analyzed by a four-part balancing test which measures "the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Id.* at 530.  No one factor is dispositive, but rather each is weighed against the other.  The Speedy Trial right in any concrete case is "slippery," "amorphous," and "impossible to state with precision."  *Id.* at 522-23.  The analysis must be geared towards the particular, fact-bound context of each case.  *Id.* at 522.

---

[2] The Speedy Trial Act also invests criminal defendants with speedy trial rights, but Battis has not made a claim under the Act.

**Length of the Delay**

The length of the delay functions both as a threshold and as a separate factor in the balancing test. *Hakeem v. Beyer,* 990 F.2d 750, 759-60 (3d Cir. 1993). In order to reach the other three *Barker* factors, a defendant must first show "presumptively prejudicial" length. *Id*. Once that threshold is met, the length enters into the balance as one of the four factors to be weighed, and its weight increases with its length. *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)).

Prosecution and defense agree that the present delay of 32 months is presumptively prejudicial and sufficient to reach the rest of the *Barker* test. Considered next as one of the four *Barker* factors, I find that 32 months is a serious and unusual delay. Thus, the length of the delay weighs in Battis's favor.

**Reason for the Delay**

Trial delays can be caused by the machinations of either defendant or prosecution, and they can operate either in the defendant's or the prosecution's favor. *See Barker,* 407 U.S. at 527-28. Because of these strategic considerations, the reasons for the delay must be carefully analyzed to see who created the delay and whether that delay was an unacceptable manipulation or an acceptable incident of the criminal process. Delays intended to hamper the defense will weigh heavily against the government. *Hakeem*, 990 F.2d. at 766. Delays caused by governmental negligence will also be weighed against the prosecution, but less heavily than intentional delays. *Id.* A delay attributable to a defendant's deliberate stalling or other interference in his own prosecution (for example, being a fugitive) will be heavily weighed against the defendant. *Id.* Delay that is simply the normal incident of the criminal process that allows the case to proceed with due

deliberation does not weigh against the government.  *See, e.g., Doggett*, 505 U.S. at 656; *Wells v. Petsock,* 941 F.2d 253, 257-58 (3d Cir. 1991).

Here, the United States has stated that it permitted the delay in order to give deference to the state court prosecution.  Such deference is a matter of policy and discretion:  Battis presumably could have legally been tried in both jurisdictions at the same time.   In exercising its deference, the Unites States did not act in malice, or in an attempt to hamper Battis's defense.  Its conduct does not evidence bad faith towards Battis; instead, the predominant concern was promoting harmonious relations between local and federal prosecutors with shared jurisdiction over a single city.  This delay is justifiable and does not weigh significantly against the United States.

### Defendant's Assertion of His Right

A defendant's assertion of his Speedy Trial rights weighs in his favor, although failure to assert the right does not waive it.  *Barker*, 407 U.S. at 528.  There is no requirement that a pro se defendant make a formally perfect Speedy Trial demand.  However, where a defendant is represented by counsel, there should be a formal motion or notice to the prosecution in order for this factor to weigh "heavily" in favor of defendant.  *Hakeem*, 990 F.2d at 765.

Battis was technically pro se in federal court.  But as Battis himself has argued, his interest in speeding up his federal trial was parallel to his interest in favorable resolution of the state court matter:  he believed that resolving the federal charges first would lead to dismissal of the state charges or a concurrent state sentence.  As such, his state court attorney's contacts with the federal prosecutors are functionally indistinguishable from what federal counsel would have done on Battis's behalf to assert

his federal speedy trial rights. Thus, Battis should not be judged under the more generous standard accorded to pro se defendants.

Battis has established that he did make some effort through his state court attorney, Sagot, to put the AUSA on notice that he wanted the federal case go forward. However, Battis certainly did not make the utmost effort to get himself before this Court and move the federal case forward. He never contacted the Court by informal communication or formal motion until the present motion was filed. Nor did he make further contact with the AUSAs after the initial conversation. Most importantly, he did not clearly communicate to the AUSA the "tacit agreement" he had reached with the state prosecutors to drop the state case if the federal case went first. Conveying that information would have been of the essence if Battis really wanted to move forward in federal court: the reason the federal prosecutors delayed in the first place was because they were deferring to the state prosecutors. If the state prosecutors were now ready to defer to the federal prosecutors, the United States' motive for delaying would be gone. In conclusion, Battis's assertion of his right weighs only very slightly in his favor.

**Prejudice**

Prejudice from pretrial delay can be grouped into two categories: personal prejudice and prejudice to the defense. Personal prejudice includes "oppressive pretrial incarceration, the accused's anxiety and concern over the outcome of the litigation or impairment of the defense, including general concern over the delay's effect on the reliability of the truth finding process." *Hakeem,* 990 F.2d at 760-61. Prejudice to the defense, which is the most serious form of prejudice, includes loss of favorable witnesses and evidence . *Doggett*, 505 U.S. at 654.

*Personal Prejudice*

Battis was incarcerated by the state during the entire course of the delay in his federal case. He almost certainly would have been incarcerated during this period, either by the state or the federal government, regardless of the federal pre-trial delay. But this does not foreclose the possibility of personal prejudice: all pretrial detention can inflict a potentially serious mental burden, even where one is already incarcerated on another charge, because the specter of the unresolved charges creates anxiety independent of the incarceration itself. *Smith v. Hooey*, 393 U.S. 374, 379 (1969). However, Battis has only argued that he was personally prejudiced by detention because he lost his job and was separated from his family --- harms that arise out of the incarceration itself. Tr. at 17. These harms were not caused exclusively by the federal delay. With or without the delay, he would have been in custody (state or federal) unable to make bail. Nor has Battis submitted the proof of mental suffering, such as psychiatrist's reports, required to show emotional distress caused by pretrial delay. *See, e.g., U.S. v. Dreyer*, 533 F.2d 112, 116-17 (3d Cir. 1976).

*Prejudice to the Defense*

In analyzing prejudice to the defense caused by pretrial delay, the court looks to the details of the evidence that the defendant claims has become stale---memories grown foggy, witnesses deceased, physical evidence decayed---and conducts a loose "but-for" analysis to look for a causal connection between the delay and the prejudice. *See, e.g., Hakeem* at 990 F.2d at 763; *U.S. v. Dent,* 149 F.3d 180, 185 (3d Cir. 1998). However, because "what has been forgotten can rarely be shown," a defendant does not necessarily need to show affirmative proof of how the delay has prejudiced him. *Doggett*, 505 U.S.

at 655-57.  A presumption of prejudice grows along with the length of the delay.  *Id.* (delay of over eight years).  At the same time,

> the mere possibility of absence or loss of memory of witnesses in a case is not sufficient to make out a speedy trial violation, since delay is a two-edged sword. It is the government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden.

*Pemberton*  813 F.2d at 629 (citations omitted).

Battis argues that he has lost his chance to locate and interview certain witnesses in a timely manner; that witnesses' memories will have faded; and that he would have collected evidence of bullet strike marks that have now disappeared with time. But Battis was able to mount a prompt and full defense to the state charges, which involved the same incident as the federal charges.  He had an experienced attorney and investigator working on his behalf, and they later turned over at least some of their files to the Federal Defenders.  Battis's Federal Defenders may certainly have approached the investigation differently than his state counsel, but any possible difference in technique (i.e., the witnesses they chose to interview and the physical evidence they chose to document) does not amount to prejudice.  The passage of time may have affected witnesses' memories, but Battis had full opportunity to preserve statements close to the time of the incident, and these can now be used to refresh the witnesses' memories or to impeach later contradictory statements.  Battis is thus unable to show significant prejudice against him caused by the delay.

## Analysis

Despite the fact that the government caused a presumptively prejudicial delay, Battis has not been prejudiced by the delay.  Had Battis more vigorously asserted his

wish to be tried in federal court, the balance might tip in his favor.  But in fact, he did not act the way a defendant who truly wished to be tried in federal court would have acted.  Taking the four *Barker* factors together, Battis cannot show a Sixth Amendment Speedy Trial violation.

## Conclusion

The defendant's motion to dismiss the indictment is denied.  However, I will reconsider the issue of bail and I will entertain any motions by Battis's federal attorneys to compel Battis's state attorneys to turn over any remaining files.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| United States of America | : : : : : : : |  |
| v. | : : : | No: 04-cr-88 |
| Germaine Battis | : : : : |  |

## **ORDER**

This _____ day of _____, 2007, **IT IS ORDERED**: Defendant's Motion to Dismiss the Indictment (docket entry # 20) is DENIED.

_____
_____
ANITA B. BRODY, J.

11

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to:

12